Morning Your Honors, this is an insurance coverage action based on the question of whether a standard commercial general liability policy, which is generally understood to cover negligent injuries, covers the injuries in this case, which the underlying court made a specific finding that they were based on negligence, specifically the defendant in a TCPA junk fax case, was taken in by a third party fax broadcaster who represented that all of their faxing was lawful, all of their recipients consented to receive the faxes and this turned out to not be true. This is the same broadcaster and frankly the same fax pattern down to the pleadings that the Michigan Court of Appeals considered. Both parties agree that the absence of permission, the third party sender, did assure that there was permission. Both parties agree with that? Yes. We don't need to be concerned about the background of that? Okay. I mean I'm asking you. Well, I think that that's true and I think that that really is the key fact in the case. What acuity has argued and I think what the district court held was, well, when you send a fax you use up somebody's paper and toner and so it really doesn't matter if you thought that they consented or not. But the problem there is what the policy covers is injury and you don't get legal injury unless you violated the statute or committed some sort of common law tort, none of which happens when you send a fax to somebody who asked for it. And so, as multiple courts have held, the mindset is key. And frankly, this is a case that is almost entirely on all fours with what this court did in standard construction versus Maryland casualty. The fact pattern there, this wasn't sending faxes. It was dumping debris. The construction company came and dumped debris on the underlying plaintiff's land. Underlying plaintiff said, what are you doing? And sued them for the damage to the land and to the property. And the insurance company said, well, you went, you dumped debris on their property, there wasn't anything accidental there, there's no coverage. And this court disagreed, I believe, in that case, reversing a district court and saying, now hold on, the intent, there was a mistaken belief in consent here. And had the insured been correct in their belief, the dumping of the debris in this spot was not actionable, would not have committed a legal injury. And that's really, there really is no difference between that case and this one. Another case. Yeah, okay, what did the policy say? I mean, you know, this is a contractual interpretation case, so, you know, do you know what the policy says? Yeah, it's standard commercial general liability language. The insured. Did it define occurrence as accident? Yes, yes. Use the same word? Same wording, both for the occurrence definition and for the expected or intended injury exclusion that is the other half of. And it didn't separately define accident? No, no. Okay. In fact, I've done a lot of these. The foundation, you know. Right, I'm sorry. No, no. I've done a lot of these cases all over, and I have yet to see an insurance policy that defines accident. Right. This policy says an accident including continuous repeated exposure to substantially the same general harmful conditions. That's the standard occurrence definition, yes. But I think, as I understood Judge Kethledge's question was, is the word accident itself defined? Sure, okay, sorry. And they don't. And so there's, because nobody defines this term, there's this body of case law that's cropped up both in this context and other contexts. And most states, including Ohio, have come to the conclusion, as this course held in the standard construction case, that an accident is something that happened in the absence of an intent to injure. That an insured can act intentionally, but as long as the insured doesn't intend to injure in any way, it falls within the occurrence definition in the standard CGL policy, and it's not expected or intended injury. From the standpoint of the insured. From the standpoint of the insured, exactly. And here, the insured hired what they believed to be a reputable third-party vendor to undertake some advertising services for them. And they had no reason to believe, especially given the representations that were made that everyone concedes were made, that this advertising was going to be undertaken in an unlawful way. And that unsolicited faxes were going to be taken. As I understand Mr. Travis's argument, he's saying that, wait a minute, the claim now is for property damage, and the property damage is the use of the toner and all this stuff. And surely your client knew that the toner and all that stuff was going to be used. So how's that an accident? Well, just like in standard construction, that the guy dumping the debris knew that it was going to affect the area where it got dumped. But if it was agreed to, if it was invited, there is no injury. And you agree that we look to Ohio cases interpreting this exclusion? Absolutely. And one case that I found to be at least, if not completely on point, but at least a good guide, is the City of Willoughby Hills case. City of Willoughby Hills versus Cincinnati Insurance Company. Because that's a case, it was coverage under similar strictures for a defamation claim. In terms of the insurer argued that that shouldn't be covered because that was something done intentionally. The insured said it, they meant it, and they knew it was going to cause the economic injury that it did. And that case went all the way up to the Ohio Supreme Court. And the Supreme Court held that there was coverage because the way that that case was pled, and this was a pleadings case, was that the insured knew or could with the exercise of reasonable care have ascertained that the matter was untrue. Which is exactly the allegation and really the circumstance in this case, that the insured with possible exercise of more diligence could have maybe found out that these faxes were going where they weren't supposed to. But there, the insurer's thrust of his argument was, well, you knew what you were saying, and you knew the effect it was going to cause. But as long as, I guess, the colloquialism that I've heard is that you have empty head but pure heart. These CGL policies are going to provide coverage, and that's really the circumstance that we have here. And actually, this would be the third appellate court to find coverage in this fact pattern involving this broadcaster getting somebody into hot water under the TCPA, the Michigan appellate court, as I mentioned, did so in Lake City. And very recently, an Illinois appellate court got another one of these cases with the same underlying negligent finding in a case called Standard Mutual versus Lay, which is 2014 ILAP 4th 110527-B, which I can provide as a supplement, but it's the same broadcaster, the same fact pattern, the same coverage arguments. And the court found coverage. So, unless your honors have any further questions, I can yield the balance. Somebody's presumably going to talk about jurisdiction at some point. Okay, I can go through that briefly. We brought the Good case out of the Seventh Circuit to this court's attention. Just is officers of the court to acknowledge that it's out there. We don't think that it's right. The body of case law out of this circuit, as I understand it, is that when you get a declaratory judgment action like this case is, the measure of the amount in controversy is the value of the object of the litigation, which would be the total unpaid judgment of 2 million. The fact that that sum, should it be recovered from acuity, would then get distributed to the class members, I don't think creates a jurisdictional amount in controversy problem, because the litigation is about securing the whole sum. And certainly from the defendant's perspective, it's a $2 million case. Thank you. Travis? Thank you, may it please the court. I am John Travis, representing Acuity Insurance Company. Parties do agree that Ohio law applies, and the appropriate inquiries are- Since we just discussed jurisdiction, would that fit within your plan to move that to the front of your argument? Sure, we can do that. The Everett versus Verizon case, we think, out of this circuit, which is cited in our letter brief, indicates that the common fund from which the plaintiffs may seek recompense is typified by this case. We have an insurance policy. The court retained continuing jurisdiction over the settlement, and I think this is a classic case where you have an insurance policy and the claims are such that the court retains jurisdiction, this court has jurisdiction. So it's one of the things we agree on. Well, are you familiar with the Peacock case from the Supreme Court, US Supreme Court? I can't say as I am at the top of my head. I'm not trying to give you a pop quiz, but as I read that case, it seems to say that there's a doctrine where if there is a claim pending over which the court does have jurisdiction, say federal question jurisdiction, like under this FACS statute, the court can exercise ancillary jurisdiction while that federal claim is pending. But once it's adjudicated, then the court cannot move on to adjudicate another separate claim over which it doesn't have jurisdiction. And I just wonder if that's kind of the scenario we have here. I mean, perhaps the court would have had ancillary jurisdiction over acuities, over the insurance issue when that was first brought. But now that the TCPA, if I'm remembering the acronym correctly, the federal claim is sort of already resolved, what's the basis of saying the court can go on to resolve purely a state law issue? There's more than $75,000 at issue, and I think the court has discretionary jurisdiction given the diversity of citizenship. Well, so you're relying then on the aggregation theory? That's one response, but there's a common fund essentially. And one of the courts said it's prototypical that when there's an insurance policy and that everybody is making a claim against those policy proceeds, that satisfies the jurisdiction. That satisfies the amount. I think Judge Kethledge is asking you about, I mean, so you argue that it satisfies the amount by aggregating. But Judge Kethledge is asking you about, in the absence of a federal law, being at bar. With the other prong of jurisdiction. I think there's diversity of jurisdiction. Acuity is a Wisconsin company. Okay. The parties agree Ohio law applies. And the appropriate inquiries are whether there is coverage in the first instance, are they under the grant of coverage, and whether an exclusion applies. With respect to grant of coverage, at page 115 of the policy, it provides under the business liability and medical expense coverage. This insurance applies, number one, to property damage only if A, the property damage is caused by an occurrence, occurrence must be an accident. Similarly, there's an exclusion that says there's no coverage if the bodily injury or property damage is expected or intended. We need to look to Ohio law. There are cases all over the country interpreting different state's laws. Ohio is where we need to focus on, of course. We have an Ohio Supreme Court case that is instructive, and I think essentially dispositive. All state insurance company versus Campbell. We raised this in the trial court, court of appeals. The plaintiff is silent, doesn't even try to distinguish all state versus Campbell. Involves a case where some kids were putting up a styrofoam deer in the roadway. And the issue was whether there was coverage or not. And the Supreme Court clarified the law. What happened again? Pardon me? What happened? What was the injury? Kids were putting a styrofoam target deer in the roadway, and they wanted to see what happened when the motorists came along and they were amused by what was going on. And the Supreme Court looked at the inferred intent doctrine. What happened though? I mean, what's the end of story? There was a bad motor vehicle accident. Someone was injured. All right. So the claim was the kids were negligent, and there was an injury. And the Supreme Court says, wait a minute, this is not an occurrence, it's expected or intended. And the Supreme Court laid down the law in Ohio. And the court explained that if the insurance act and the harm are intrinsically tied, so that the act has necessarily resulted in the harm, there's no coverage. So that's the test now in Ohio, whether the act necessarily results in the harm and the act and the harm are intrinsically tied. And the court looked at the facts and says, well, there was another motorist that went by. We're not going to say there's no coverage because the act and the harm are not intrinsically tied. That's the test in Ohio. It's relatively recent. The Supreme Court clarified that that's why that other Sixth Circuit case is not an appropriate reference point for determining the coverage question presented here. So the key- Let me ask you a question then. So it might depend on how you define the harm. And let's say that I ask your office to send me a fax at my home. And you say, okay, fine, and you do it. And the fax comes out, and it uses my toner and everything, and I get the fax, and I wanted the fax. Have I suffered property damage within the meaning of the policy? Yes, even though there's not a compensable claim. That's the point. The courts are confusing the difference between liability and coverage. And as Judge Gwynne observed, and many courts say, it's impossible to send a fax- You're saying that's an accident then, or? It's not something for which the insurance policy affords coverage. Policies don't cover everything under the sun. It's just you have to look at the language of the policy, the property damage. But here you're trying to enforce an exclusion. It's both the occurrence and the exclusion. The analysis is very similar. The grant of coverage says the insurance applies only to property damage if the property damage is caused by an occurrence, which means an accident. That's the burden of the policyholder. Yes, insurance companies have the burden with respect to exclusions. But what it says is that there's no coverage if the property damage is expected or intended. How can you send a fax without having the toner and the paper and the ink depleted? You can't. The harm and the act are inextricably tied so that one necessarily results in the other. The district court counsel found that although the unsolicited faxes were property damage, the faxes were not caused by an occurrence. That's true. That was a specific- Would you respond to that finding of fact by the district judge? The judge was correct because there was- Everyone must concede, and the appellant is not maintaining, that you can send a fax without having essentially property damage. It's just in the nature of the fax. And I do want to point- Judge Cook, you asked a question before about what was in the record or whether the parties agree that this was simply negligence. Here's the stipulation. On page 6 of 18, we stipulated that the defendant was solicited by a fax broadcaster that represented that its fax advertising was with the permission of the recipient. That's what the record shows. That's all the record shows. That's all I asked. That's it. That's it. So there's nothing about the state of mind. I understand that you don't go beyond that it was thought to be with permission. That's all. I want to confirm that. I'm sorry, Your Honor. And it's really not even that far. It's just that the defendant was solicited by a fax broadcaster that represented the fax would be with their permission. It doesn't say anything about the state of mind. But it was never a feature of the litigation to contest that. It was not. And it doesn't really matter. Okay, great. Because we do have to look at the policy of insurance. The Supreme Court of Ohio has told us that if the harm and the act are inextricably tied, there is no coverage. It doesn't mean that they're, it doesn't essentially go to whether there's a viable cause of action. I think courts sometimes confuse the two. The Park University case, for example, focused on the asserted belief of the policyholder that the faxes were welcome. Whether the fax was welcome or not doesn't change the policy of insurance, doesn't change the law, doesn't mean that there was unexpected or unintended property damage. There is, in a fax blast case. In Ohio, given the Allstate versus Campbell formulation, which the appellant completely ignores, the act and the harm are inextricably tied. Also, another case we mentioned that the appellant chooses not to respond to in the reply brief is Westfield versus Custom Agri. Again, the Supreme Court said that there was, in the context of defective construction or workmanship, that there is no occurrence for claims brought by a property owner. It's not property damage caused by an occurrence under a CGL policy. Again, the Supreme Court's enforcing this idea. It seems like you're arguing that the property damage must be accidental. It has to be an accident. Yes, that's what the policy says. Property damage itself has to be. That's what the policy says. But the policy seems to say the property damage has to be caused by an accident. Correct, which means accidental. Caused by an occurrence, which means accidental. That's what the grant of coverage is. I mean, couldn't you have an occurrence that's accidental, which has a result that was totally foreseen? But they didn't mean to, I guess, have the occurrence happen. And the occurrence is a thing that has to be accidental, not intentional. Also, the property damage, according to this wording, the property damage must be caused by an accident. That's in the grant of coverage, page 1 of 15. Property damage must, I'm sorry, and can you repeat that? Property damage must be caused by an occurrence. And where is that in the policy? That's in the grant of coverage, it's 1 of 15, it's in the proposed stipulation, and it's under the liability of- Property damage must be caused by an accident or caused by an occurrence? Occurrence. This occurrence applies to bodily injury or property damage only if the bodily injury or property damage is caused by an occurrence. So it's not just the negligence, the property damage also must be accidental. That's the point of custom agri, that's the point of Allstate versus Campbell. Okay, now I understand your argument. I interrupted you earlier, you were about to distinguish standard construction. Yes, well it was before Allstate versus Campbell, and it's before the Supreme Court of Ohio clarified what the law is in our state. It's not the same- So it's not good law, in your view? It's not reflective of Ohio law as articulated by the Supreme Court currently. So it's not good law? Well, for your case, you'd have to say no, it's not. Yeah, and I'm trying to remember if that was an Ohio case, I'm not sure it was an Ohio case. I don't remember either, but let's say it was good law, do you lose? I think you can draw a distinction between a situation where someone accidentally goes on property and doesn't know what's going on versus a situation where the person who's sending the fax knows necessarily that there's going to be a loss of use of toner and ink and paper and the fax machine is tied up. Let's say, I mean, the fax were, and I don't remember those fax, I don't know the fax. But if the debris, let's say, was dumped on a lawn, and the dumper thought they had the permission of the lawn owner, but it turns out they didn't. The dumper knew it was going to kill that area of the lawn, so the people had to buy a bunch of sod, and they knew that was going to happen. The dumper did. Doesn't that, isn't that kind of the same case we have here? That the result was certain, but they say they thought they had permission, they didn't, therefore the occurrence was accidental, therefore there's coverage. Well, wouldn't that apply here if that case is good law? Certainly that's one of the arguments that my opponent is making, but I'd like to go back to what the record reflects. It doesn't say anything about what the appellants thought. It's just that it was represented to them that the faxes were going to be in compliance with the law, essentially. We don't know what the state of mind is. It doesn't really matter, because this case is governed by the allegations of the complaint and what the policy of insurance says. So you would quarrel with the implication that there was permission as being taken by this company? It's not in the record. It's not in the record, but that wouldn't be a logical, I mean, courts couldn't take that? I suppose you could draw the inference, but when you're looking at the policy of insurance, that doesn't change. We think the judge went and got it right, and he pointed out that faxes, whether solicited or not, cause property damage because they deprive the recipient of the use of its fax machine and consume toner, paper, and ink. Again, we're looking at the policy of insurance, and it may strike some people as being, well, there really should be coverage here. But it's not the court's job to rewrite the policy or make judgments as to what we think should or shouldn't be covered. Right. I think we have- It's not in it. Appreciate the argument. Thank you very much. Thank you, Mr. Campbell. Thank you, your honors. With respect to the Campbell case, it basically stands for the general proposition that if you know a particular harm is going to result from your act, a particular legal harm in that case, then that is what is not covered. The problem here, I think- Is this case in your brief? I can't find it. All State Campbell? It is not. It's in his brief. So council didn't have any notice, so you're going to stand up and make that kind of your centerpiece authority in this argument? Campbell? Mr. Travis. Yeah. Mr. Travis cited it. I'm sorry. Mr. Travis cited it. And he relies on it. He's criticizing me for not bringing it up in my reply. Okay. No, I'm sorry. I thought we were talking about- Go ahead. I do want to know whether standard construction's involved. Standard construction, yeah, that's in my briefing. Okay. I just want to make sure he had fair notice, if that was going to be part of your argument. Sure. And, I mean, standard construction is really not a unique case. I mean, the law is filled with circumstances where intentional acts lead to unintended legal consequences. And I think that the issue about what the policy says is a crucial one. Because what it says is, we'll pay those sums, the insured becomes legally obligated to pay his damages because of property damage, as long as it's caused by an occurrence. So as long as there's some sort of accident somewhere in the chain leading to this legal liability, it falls within this coverage grant. And in this case, the undisputed fact is that this insured gave the go ahead for these faxes to be sent after being specifically told by the broadcaster that what they were doing is legal. Not unlike any business interaction where a third party vendor is hired to perform a service. They represent that they're going to perform the service in a way that complies with the law. You expect that that's what's going to happen. It didn't happen here, and these guys got tagged with a seven figure judgment. It is squarely within standard construction. Ohio says nothing different than today than it did then. Nor do I think standard construction actually is a Tennessee case. But there's no case law out there, whether in the briefs or otherwise, that says that Ohio's got a different standard than Tennessee. And frankly, Ohio's got the same standard in this area as Michigan. And that's why the Lake City decision, which thoroughly analyzes these issues in the same factual time. Which case do you point, which Ohio Supreme Court case do you point us to, to best serve your side of the argument? Probably City of Willoughby Hills, and then there's a more recent case, which we discuss at length in both briefs, which is escaping my mind at the moment. Mr. Travis assures us that the most recent case slams the door. It doesn't. Because we talk about You respond to that in your reply brief? We do, and in our opening brief, we talk at length about a very recent Ohio Supreme Court case. Are you both speaking about the same case? No, a different case. Well, I'm asking you to respond to Mr. Travis's best case. Oh, okay, and that is a case that it's a question where the legal harm is clear to result. That it's not- That's his argument to us, that the legal harm, when you insert the paper in the machine at this end, it's going to draw from resources at the receiving end. That's not the legal harm, though. If it was welcomed and invited, there is no legal harm. That's your response? That's the issue, yes. The use of resources aside. The use of resources is the property damage which results from the accident in terms of belief and consent. Just like the destruction of property in standard construction was an accident resulting from a mistaken belief, just like in the city of Willoughby Hills, the Ohio Supreme Court said defamation based on injury from something intentionally said was covered because they didn't know it wasn't true. Thank you. Thank you, Your Honor. Very interesting case. Thank you for your arguments, counsel, and we will consider your case carefully.